```
 1
 2
 3
 4
 5
 6
```

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES ALCAREZ, | ) | 1:06-CV-00911 JMD HC |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT |
| | ) | OF HABEAS CORPUS |
| v. | ) | |
| | ) | ORDER DIRECTING CLERK OF COURT |
| T. FELKER, | ) | TO ENTER JUDGMENT |
| | ) | |
| Respondent. | ) | ORDER DECLINING ISSUANCE OF |
| | ) | CERTIFICATE OF APPEALABILITY |

Petitioner James Alcarez ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation at High Desert State Prison in Susanville, pursuant to a conviction in June 2003 in the Fresno County Superior Court. (Pet. at 1). Petitioner was found by the jury to have committed second degree robbery (Cal. Penal Code § 211) and assault by means likely to produce great bodily injury (Cal. Penal Code § 245 (a)(1)). Petitioner was further found by the jury to have committed both crimes with the personal use of a deadly and dangerous weapon (Cal. Penal Code §§ 667 and 1192.7). (Pet at 1; Answer at 1-2). At a bifurcated proceeding, the jury further found true allegations that Petitioner had four prior strikes (Cal. Penal Code §§ 667(b)-(i) and 1170.12(a)-(d)), three prior felony convictions (Cal. Penal Code § 667(a)(1)), and five prior prison terms (Cal. Penal Code § 667.5(b)). (Answer at 2). Petitioner was sentenced to an aggregate term of sixty-eight years,

1  consisting of three five year enhancements for prior serious felony convictions, three one year
2  enhancements for prior prison terms, and two consecutive indeterminate terms of twenty-five year to
3  life. (Lod. Doc. 1, Cal. Ct. App. Dec. at ).
4      Petitioner appealed his conviction to the California Court of Appeal, which issued a reasoned
5  opinion on February 10, 2005. (Lod. Doc. 1). The state appellate court reversed Petitioner's
6  conviction pertaining to the personal use of a deadly and dangerous weapon, stayed the indeterminate
7  twenty-five year term for assault by means likely to produce great bodily injury, and struck a one
8  year prior prison term enhancement. (Lod. Doc. 1 at 41). In all other respects, the appellate court
9  affirmed Petitioner's conviction. (Id).
10     Petitioner filed a petition for review to the California Supreme Court. (*See* Lod. Doc. 2).
11 The California Supreme Court summarily denied the petition on April 20, 2005. (Lod. Doc. 3).
12     On July 18, 2006, Petitioner filed the instant federal petition for writ of habeas corpus with
13 the Court. (Pet. at 1).
14     On August 1, 2007, Respondent filed an answer to the petition.
15     <u>Consent to Magistrate Judge Jurisdiction</u>
16     On July 28, 2006, Petitioner consented, pursuant to Title 18 U.S.C. § 636(c)(1), to have a
17 magistrate judge conduct all further proceedings, including entry of the final judgment. (Court Doc.
18 3).
19     On June 8, 2006, Respondent also consented to the jurisdiction of a magistrate judge. (Court
20 Doc. 6).
21     On February 6, 2009, the case was reassigned to the undersigned.
22                           **FACTUAL BACKGROUND**[1]
23     Fresnan Hardip Bhatti owned a check-cashing business that required operating
       capital of $7,000 to $8,000 and he commonly carried $4,000 to $5,000 in cash in his
24     pocket. Bhatti worked for B & G Liquors on Kings Canyon Road in Fresno and
       operated his check-cashing business at that store. Generally speaking, the person
25     running the store cash register would also cash checks. If another employee was
       present, that person would cash customers' checks at a counter a few feet away from
26     the register.
            On November 27, 2002, Bhatti was working at B & G Liquors with store
27

28     [1]The facts are derived from the factual summary set forth by the California Court of Appeal, Fifth District, in its
   unpublished opinion issued on February 10, 2005, and are presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1).

manager Gurcharn Gill. At approximately 12:50 p.m., Gill went out to buy lunch and left Bhatti alone at the store. During Gill's absence, appellant entered the store and asked for Buglar tobacco. Bhatti had seen appellant in the store on two or three occasions over the course of several months. When Bhatti turned around to get the tobacco, appellant walked behind the counter, put a gun to Bhatti's head, and drew his arm around Bhatti's neck. Bhatti was "really afraid" because he had never been robbed and had never been so close to a gun. Because Bhatti recognized appellant, he asked several times if appellant was joking. Bhatti was unsure whether appellant was actually going to rob him.

Appellant took money from Bhatti's pants pocket, pushed the gun against the right side of Bhatti's head, and told Bhatti to open the store register. Bhatti opened the register, tried to bite appellant's hand, and then tried to grab the gun. He made contact with appellant's hand but did not break the skin. The gun fell to the floor. Appellant hit Bhatti several times with his hand near Bhatti's right eye and bloodied the right side of his lip. Bhatti was scared and fell onto the ground. Appellant took money from the cash register and left the premises.

After appellant departed, Bhatti got up, picked up some $5 bills that appellant had left on the ground, and put the money into his pants pocket. Bhatti testified that when he did so, he realized that his check-cashing money was missing. Bhatti prayed, talked to himself, and looked for someone to help him. He did not see anyone when he went to the door. However, he did see appellant's gun lying on the floor. Bhatti tried to call the police but was not feeling well and decided to wait for Gill's return. Bhatti was frightened, tired, and confused and decided to rest on the floor.

Minutes after Bhatti began resting on the floor, customer Stephen Dufur entered the store with a female companion, saw the bloodied Bhatti lying on the floor, and asked what had happened. Bhatti said he had been robbed and Dufur called the police. Bhatti subsequently gave the officers the $5 bills he had placed in his pocket. This was the money that appellant had left on the floor. Bhatti also told the officers what had happened at the store.

At about 1:00 p.m. on November 27, Fresno Police Officer Richard Blancas and his trainer, Officer Mike Cavallero, were dispatched to B & G Liquors. When they arrived, Blancas saw Dufur on the telephone while standing over the counter. Blancas saw Bhatti lying on the other side of the counter, called for an ambulance, and then took a statement from Dufur.

The officers tried to control the crime scene to avoid contamination of evidence and Blancas went behind the counter to help Bhatti. He noticed blood around Bhatti's mouth, blood on Bhatti's shirt, and a silver handgun on the floor. Blancas did not touch the weapon and instead tried to get information from Bhatti. However, Bhatti appeared "semiconscious" and "disoriented." After the medical personnel arrived, Bhatti gave Blancas a description of the robber. Blancas included Bhatti's information in his report and noted the silver handgun was actually a toy.

Fresno Police Identification Technician Michael Burrow and a robbery detective arrived at the scene sometime later. Bhatti was not present when they arrived. Burrow talked to Officer Blancas, walked through the crime scene area, and watched a store surveillance videotape in the back room of the store. Burrow also took photographs, picked up the handgun with gloved hands, and processed the toy handgun and the area for fingerprints. Burrow was unable to obtain any fingerprints.

Burrow did not know that Bhatti had gotten up after the robbery, walked around, and then laid back down on the floor of the store. He also did not know that Bhatti had bitten the appellant's hand. Burrow was at the store for 30 to 45 minutes and left the premises before Blancas and Cavallero. Burrow later wrote a report and booked the toy handgun into evidence. Another fingerprint test on the handgun was also unsuccessful.

Blancas took a brief statement from Gill, who returned to the store as Bhatti was being placed in an ambulance. Blancas maintained the scene at the front of the store while Cavallero went to the back room storage area with Gill. When Cavallero

returned to the front of the store, he had a videotape in his possession. Blancas took the videotape and later booked it into evidence. Cavallero subsequently watched the videotape and discussed its contents with Blancas. Blancas and Cavallero followed Bhatti's ambulance to the hospital.

Bhatti was still confused, tired, and frightened at the hospital. He received multiple stitches in his mouth and gave another statement to the officers, who also took photographs. As previously stated, Bhatti gave the police the $5 bills he had picked up from the floor. Officer Blancas did not want to touch the money because the bills had blood on them. He used gloves to put the money in a biohazard bag and later took the currency to police headquarters. An identification technician at headquarters booked the money. Burrow testified that Cavallero gave him the money and a fingerprint test of the bills was unsuccessful. At the hospital, Blancas noted that Bhatti seemed more aware of his surroundings and of what had occurred at the store. Bhatti gave information to Blancas, who later incorporated it into his police report. At trial, Bhatti identified a photograph of his stitches.

When Bhatti went home from the hospital, he reviewed his records and learned that $4,700 in cash was missing from his pocket. When Bhatti returned to B & G Liquors, Gill told him that $200-$250 was missing from the register and that police had taken the videotape from the store surveillance camera. A few days after the robbery, some police officers came to the store and spoke with Bhatti.

On December 2, 2002, Fresno Police Detective Richard Lee was assigned to conduct a follow-up investigation of the robbery. He received the police reports and the store videotape. He opened the sealed envelope containing the videotape, and viewed the videotape. Lee put the videotape on pause mode and printed four still pictures of appellant's face.

The following day, Bhatti went to the police station at Lee's request. Lee showed Bhatti one of the still photographs from the videotape. The picture reflected an incorrect date and time (January 28, 2000 at 3:52). Bhatti nevertheless said the picture depicted the same (his) robbery. Lee had Bhatti sign the still photo taken from the videotape. Bhatti testified that Lee showed him two pictures, asked him if he could recognize "the guy," and Bhatti signified he could do so. Bhatti recognized himself and appellant in one of the photographs.

On December 6, 2002, Lee created and issued a patrol alert that included two of the videotape still photos and identifying information about appellant. Officer Torres told Lee that appellant met the description. Lee reviewed appellant's information and agreed with Torres. Lee contacted appellant and found that his face resembled the robber in the tape.

On December 10, 2002, Detective Lee prepared a photographic lineup of six pictures, took the photo lineup to B & G Liquors, read a lineup admonition to Bhatti, and showed him the lineup. Lee's lineup focused on Hispanic subjects because Bhatti had said the robber was Hispanic. Bhatti again identified appellant as the robber. Bhatti also identified photographs of B & G Liquors and photos depicting appellant pointing a gun at Bhatti's head and hitting him. According to Lee, Bhatti knew appellant was the robber because he had twice seen appellant in the store.

Lee placed appellant under arrest. Lee talked to Gill and learned that $245 was missing from the B & G cash register.

At trial, the jury watched a videotape of the robbery, including footage before and after the offense, at least five times. Bhatti identified himself and appellant on the tape. The parties entered several stipulations of fact: (1) appellant did not have an injury to either of his hands at the time of his arrest; (2) Officers Cavallero and Blancas did not interview the second person who entered the store at the same time as Dufur; and (3) all the parties were present in court when the videotape envelope was opened.

***Defense***

Appellant did not present any documentary or testimonial evidence but chose

to rely on the state of the prosecution evidence.

(Lod. Doc. 1 at 3-7) (footnotes omitted).

## DISCUSSION

**I.      Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution and Petitioner's custody arose from a conviction in the Fresno County Superior Court. Fresno County is within this judicial district. 28 U.S.C. § 84(b). As an application for writ of habeas corpus may be filed in either the district court where Petitioner is currently incarcerated or in the district where Petitioner was sentenced, the Court has jurisdiction over and is the proper venue for this action. *See* 28 U.S.C. § 2241(d).

**II.     ADEPA Standard of Review**

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in July 2006 and is consequently governed by the provisions of AEDPA, which became effective upon its enactment on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

As Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment, Title 28 U.S.C. section 2254 remains the exclusive vehicle for Petitioner's habeas petition. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting White v. Lambert, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a state court judgment even where the petitioner is not challenging his underlying state court conviction). Under AEDPA, a

petition for habeas corpus "may be granted only if he demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see* Lockyer, 538 U.S. at 70-71.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; *see also* Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth

Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See* Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

### III.   Review of Petitioner's Claims

The petition sets forth five grounds for relief: (1) insufficient evidence to identify Petitioner as the perpetrator of the crimes; (2) insufficient evidence to convict Petitioner of assault by means of force likely to produce great bodily injury; (3) the trial court erred in instructing the jury pursuant California Jury Instruction–Criminal ("CALJIC") No. 2.71; (4) the trial court erred in denying a mistrial after the jury became aware of Petitioner's shackles; and (5) cumulative error deprived Petitioner of his right to a fair trial and due process of the law. (Pet. at 5-6A). Petitioner raised these claims to the California Court of Appeal, which was the last state court to issue a reasoned opinion in this case. As the California Supreme Court summarily denied the petition for review, the Court "look[s] through" the summary disposition to the last reasoned decision. *See* Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)). Thus, the California Supreme Court is presumed to have adjudicated all of Petitioner's claim for the same reasons cited by the California Court of Appeal in their reasoned denial of Petitioner's claim. *See* Ylst v. Nunnemaker, 501 U.S. at 803.

#### *A.   Insufficient Evidence to Identify Petitioner as Perpetrator*

Petitioner claims as his first ground for relief that insufficient evidence existed at trial to establish that he was the perpetrator in the robbery. Petitioner raised this claim to the California Court of Appeal, which rejected this ground finding that sufficient evidence existed to support Petitioner conviction for robbery. (Lod. Doc. 1 at 7-11).

In reviewing sufficiency of evidence claims, California courts expressly follow the standard articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See*

People v. Smith, 37 Cal.4th 733, 738-739 (Cal. 2005); *see also* People v. Catlin, 26 Cal.4th 81, 139 (Cal. 2001). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds" as AEDPA requires a federal habeas court to apply the standards of *Jackson* with an additional layer of deference afforded to the state courts. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). The Ninth Circuit in *Juan H* found that under AEDPA, a petition for habeas corpus may only be granted where the state court's application of *Jackson* was objectively unreasonable. Id. at 1275 (quoting 28 U.S.C. § 2254(d)). Pursuant to the Supreme Court's holding in *Jackson*, the test to determine whether a factual finding is fairly supported by the record is, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; *see also* Lewis v. Jeffers, 497 U.S. 764, 781 (1990).

Furthermore, the Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts. Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir. 1990). Although the presumption of correctness does not apply to state court determinations of legal questions or to mixed questions of law and fact, the state court's factual findings underlying those determinations are entitled to the same presumption. Sumner v. Mata, 455 U.S. 539, 597 (1981). The state appellate court correctly identified the standard pertaining to a sufficiency of the evidence claim. The court then reviewed the evidence supporting Petitioner's identification as the perpetrator, stating that:

> A review of the entirety of the evidence in the instant case reveals substantial evidence of identification. During the robbery, Bhatti asked appellant if he was joking because Bhatti recognized appellant from his previous visits to the store. When Detective Lee showed Bhatti a still photograph taken from the store videotape, Bhatti confirmed the tape depicting the robbery and confirmed that appellant was the robber. Detective Lee had Bhatti sign the photograph that he identified.
> Bhatti again identified appellant's picture in the photographic lineup that Detective Lee assembled. Bhatti signed and dated the photograph that depicted appellant. Bhatti also identified other photographs of appellant holding a gun to his head and hitting him. According to Detective Lee, Bhatti said he knew appellant was the robber because he had twice seen appellant in the store.

(Lod. Doc. 1 at 9-10). As noted in the state court's opinion, the evidence presented at trial

1 overwhelmingly supported the conclusion that Petitioner was the perpetrator. The victim repeatedly
2 identified Petitioner as the robber, even while the robbery was in progress, asking Petitioner if he
3 was joking. (RT at 111). The victim recognized Petitioner from his previous visits to the store. (RT
4 at 106). The only evidence supporting Petitioner's contention seems to have been the somewhat
5 equivocal nature of the victim's first identification, during which the following colloquy occurred:

> Q [Prosecutor]: Do you see that person in court here today?
>
> A [victim]: Yeah.
>
> Q: And where do you recognize him as sitting?
>
> A: He maybe over there.
>
> Q: I am sorry?
>
> A: He maybe over there.
>
> Q: He is over there?
>
> A: Yeah

(RT at 107-108). In briefs submitted before the state courts and in the memorandum submitted to this court, Petitioner's sole argument is that the victim's use of the word "maybe" in his first identification weighs against a finding that there was sufficient evidence to identify Petitioner as the perpetrator.

However, Petitioner admits that he physically resembles the man who robbed and assaulted the victim. Furthermore, as noted by the appellate court, the victim identified Petitioner several times prior to trial and reaffirmed those identifications during the proceedings. The state appellate court weighed the probative value of the victim's use of the word "maybe" against the other evidence supporting this identification, noting that:

> On appeal, respondent acknowledges that at trial Bhatti used the word "maybe" the first time the prosecutor asked him to identify appellant. However, respondent points out that Bhatti was an immigrant from India, had experienced language challenges, and was in a court of law for only the second time in his life. Bhatti frankly described himself as "nervous" when he was testifying about the robbery and the sequence of events immediately after the robbery. After Bhatti used the adjective "nervous" on several occasions, the prosecutor asked what he meant by the term and Bhatti explained he meant "frightened."
>
> Although Bhatti used certain phrases that might appear equivocal, a review of the entire record reflects his identification of appellant was definitive. At one point, Bhatti said, "He maybe over there." The prosecutor asked, "He is over there?" Bhatti responded, "Yeah." Bhatti also described the shirt that appellant was wearing in the

> courtroom. Later in Bhatti's testimony, the prosecutor asked whether the robber was seated next to defense counsel and Bhatti replied, "Yeah." When reviewing still photographs made from the surveillance videotape, Bhatti said, "[H]e is sitting over there." "It is him sitting over there." After the jury viewed the videotape, Bhatti testified the person who robbed him was the same person he had previously identified. On cross-examination, Bhatti confirmed that appellant had been a customer in B & G Liquors on several occasions before the robbery. Bhatti identified himself and appellant on the videotape.
>
> In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the People. ( People v. Staten (2000) 24 Cal.4th 434, 461, 101 Cal.Rptr.2d 213, 11 P.3d 968.) Our role on appeal is a limited one and we must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. Although we must ensure the evidence is reasonable, credible, and of solid value, it is the exclusive province of the trier of fact the truth or falsity of the facts upon which that determination depends. ( People v. Reed (2000) 78 Cal.App.4th 274, 279-280, 92 Cal.Rptr.2d 781.) Here, the jury could reasonably conclude from the videotape evidence and the entirety of Bhatti's testimony that appellant was indeed the perpetrator of the robbery of B & G Liquors on November 27, 2002.

(Lod. Doc. 1 at 10-11). The test to obtain relief under a claim of sufficiency of the evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. The Court notes that the probative value of the victim's use of the word "maybe" is significantly lessened when considered in the context provided by the state appellate court and also noted by the state trial court. The linguistic barriers the victim faced in expressing himself were commented on by the judge outside the presence of the jury. (RT at 133). Noting that the appellate court was required to review the evidence in the light most favorable to the verdict, the Court finds that the appellate court's conclusion that a rational trier of fact could have found that Petitioner was the perpetrator was not unreasonable.

### B.     *Sufficiency of Evidence for Aggravated Assault*

Petitioner additionally raises a sufficiency of the evidence claim for his conviction for aggravated assault by force likely to produce great bodily injury (Cal. Penal Code § 245(a)(1). As noted earlier, sufficiency of evidence claims are judged by "the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324, n. 16. California Penal Code section 245(a)(1) punishes, "[a]ny person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury." Here Petitioner challenges the sufficiency of the evidence pertaining to whether he

1 employed force likely to produce great bodily harm, contending that the nature and extent of injuries
2 to the victim fails to constitute sufficient evidence to support the aggravated assault conviction.

> An assault by means of force likely to produce great bodily injury, is an assault, as to which the force essential to all assaults is of such a nature or degree that the probable result of its application will be the infliction of great bodily injury...Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate.

People v. Covino, 100 Cal.App.3d 660, 668 (1980) (citations omitted).  It is well-established that under California law, the use of hands or fists alone may support a conviction of assault by means of force likely to produce great bodily injury.  People v. Aguilar ,16 Cal.4th 1023, 1028 (1997). Furthermore,  actual bodily injury is not a required element of the crime, and the extent of any injury is not determinative.  Covino, 100 Cal.App.3d at 667 (finding that the determinative issue is not whether the defendant inflicted serious injury but whether the force used by defendant was such that it would be likely to cause the injury); *see* Aguilar,16 Cal.4th at 1036, n. 9.

Here, the California Court of Appeal noted that the determinative question was "whether or not the force used was such as to have been likely to produce great bodily injury," as measured by "all the evidence, but not limited to, the injury inflicted."  (Lod. Doc. 1 at 12).  The appellate court noted that in this case the evidence of whether the force used was likely to produce great bodily injury included the victim's testimony that Petitioner struck him several time on his face, that the blows induced bleeding, and that he received medical attention at a hospital lasting several hours for those blows, including stitches to his lip.  (Lod. Doc. 1 at 13; *see also* RT at 113, 116, 121).  This testimony  was corroborated by photographs of the victim receiving his stitches.  As noted by the appellate court, the victim further testified that the wounds caused him to be in pain for several days afterwards.  (Lod. Doc. 1 at 13; *see also* RT at 226-227).  Petitioner's repeated blows to the victim's face, requiring the victim to get stitches and causing the victim pain, constitutes sufficient force likely to produce great bodily injury.  See People v. Roberts, 2003 WL 21757848 at 5 (Cal. Ct. App. July 31, 2003) (unpublished) (finding that there was sufficient evidence for force likely to produce great bodily injury where defendant struck the victim several times with his fists and kicked him in the hand); *see also* Ross v. Hense, 2009 WL 322146 at (C.D. Cal. Feb. 3, 2009) (finding the state court's determination, that pushing the victim down and wrestling with the victim in case where

victim suffered bruises and scratches provided sufficient evidence of force likely to cause great bodily harm, was not unreasonable under AEDPA deference). Consequently, the state court's determination on this issue was not an unreasonable application of *Jackson* in light of the facts of the case.

### C. Erroneous Jury Instruction (CALJIC No. 2.71)

Petitioner argues that the trial court's issuance of CALJIC No. 2.71 was erroneous as the trial court has a duty to refrain from instructing the jury on inapplicable and irrelevant legal principles. As Petitioner's trial counsel requested the instruction, Petitioner additionally argues that trial counsel provided ineffective assistance in requesting the instruction. The California Court of Appeal noted that Petitioner was required to prevail on his ineffective assistance of counsel claim in order to avoid application of a procedural bar on his substantive instructional error claim. (Lod. Doc. 1 at 22).

Generally, ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of 28 U.S.C. § 2254(d). Weighall v. Middle, 215 F.3d 1058, 1061-1062 (9th Cir. 2000). For the purposes of habeas cases governed by 28 U.S.C. § 2254 (d), the law governing ineffective assistance of counsel claims is clearly established. Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). An allegation of ineffective assistance of counsel requires that the petitioner establish two elements–(1) counsel's performance was deficient and (2) petitioner was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984); United States v. Olson, 925 F.2d 1170, 1173 (9th Cir. 1991); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). Under the first element, Petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions which did not fall within reasonable professional judgment considering the circumstances. Strickland, 466 U.S. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential and there exists a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994). Secondly, Petitioner must show that counsel's errors were so egregious that Petitioner was deprived of the right to a fair trial, namely a trial whose result is reliable. Strickland, 466 U.S. at 687. To prevail on the second element,

Petitioner bears the burden of establishing that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Quintero-Barraza, 78 F.3d at 1348 (quoting Strickland, 466 U.S. at 694). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the Petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any deficiency that was not sufficiently prejudicial to Petitioner's case is fatal to an ineffective assistance of counsel claim.

Clearly established Supreme Court precedents provides that in determining whether the issuance or omission of a jury instruction violated due process, the reviewing court must determine "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396(1973)). Thus, Petitioner is required to show that the issuance of CALJIC No. 2.71 prejudiced Petitioner by rendering the trial's result unreliable or the proceeding fundamentally unfair. CALJIC No. 2.71 states that:

> An admission is a statement made by the defendant which does not by itself acknowledge his guilt of the crime[s] for which the defendant is on trial, but which statement tends to prove his guilt when considered with the rest of the evidence.
> You are the exclusive judges as to whether the defendant made an admission, and if so, whether that statement is true in whole or in part.
> [Evidence of an oral admission of the defendant not made in court should be viewed with caution.]

(CT at 188, 259). Petitioner contends the issuance of this instruction constitutes instructional error, impinging upon Petitioner's constitutional right to due process and a jury trial under the Fourteenth and Sixth Amendment respectively. In their decision, the California Court of Appeal correctly identified *Strickland* as the standard by which to adjudicate Petitioner's claim for ineffective assistance. Noting that the state had conceded the inapplicable nature of CALJIC No. 2.71, the appellate court went on to the second prong of the *Strickland* test. The appellate court ultimately concluded that the issuance of the jury instruction had not rendered the trial result unreliable or the proceeding fundamentally unfair, basing this conclusion in part on the jury instructions when considered as a whole.

Examining the instructions as a whole, it is clear Petitioner's constitutional rights were not violated by the issuance of CALJIC No. 2.71.  The trial court instructed the jury that Petitioner was presumed innocent until the contrary was proven and that the burden of proving Petitioner guilty beyond a reasonable doubt rested on the prosecution.  (CT at 192, 263).  Pursuant to CALJIC No. 9.02, the jury was further instructed that in order to find Petitioner guilty of aggravated assault, they were required to find two elements–namely that a person had been assaulted and the assault was committed with force likely to produce great bodily injury.  (CT at 272).  The jury was likewise instructed on the elements necessary to convict Petitioner for robbery.  (CT at 274; *see also* CALJIC No. 9.40).  Furthermore, the jury was additionally instructed that some of the jury instructions were not necessarily applicable.  (CT at 213; *see* CALJIC No. 17.31).  As the trial court instructed the jury that they were required to find beyond a reasonable doubt every essential element of the crime in order to convict Petitioner and that not every jury instruction was applicable, the Court finds that the issuance of CALJIC No. 2.71 did not so infect the proceedings as to deprive Petitioner of his constitutional rights.  Consequently, the Court cannot say that the state court's decision was an unreasonable application of clearly established Federal law.

### D.    Denial of Motion for Mistrial

Petitioner alleges that the trial court's denial of his motion for a mistrial, stemming from the juror's observation of Petitioner in shackles, violated his right to a fair trial by an impartial jury, pursuant to the Due Process Clause of the Fourteenth Amendment.  *See* Estelle v. Williams, 425 U.S. 501, 503 (1976).  A jury's observation of a defendant in custody may under certain circumstances "create the impression in the minds of the jury that the defendant is dangerous or untrustworthy" which can unfairly prejudice a defendant's right to a fair trial notwithstanding the validity of his custody status.  Holbrook v. Flynn, 475 U.S. 560, 569 (1986).  Visible shackling during trial is so likely to cause a defendant prejudice that it is only permitted when justified by an essential state interest specific to each trial.  Id. at 568-569.  However, a jury's brief or inadvertent glimpse of a defendant in physical restraints outside of the courtroom has not warranted habeas relief.  Ghent v. Woodford, 279 F.3d 1121, 1133 (9th Cir. 2002); *see also* United States v. Halliburton, 870 F.2d 557, 560-561 (9th Cir. 1989); Wilson v. McCarthy, 770 F.2d 1482, 1485-86 (9th Cir. 1985). In *Ghent v.*

*Woodford*, the district court found that the defendant was transported to and from the courtroom in shackles and that on some of these occasions jurors observed defendant under restraint. Ghent, 279 F.3d at 1132. While the Ninth Circuit agreed with the district court's factual findings, that jurors had glimpsed Ghent as he walked in the hallway and stood at the doorway of the courtroom to have his restraints removed, the Ninth Circuit held that "[t]he jury's 'brief or inadvertent glimpse' of a shackled defendant is not inherently or presumptively prejudicial, nor has Ghent made a sufficient showing of actual prejudice." Id. at 1133.

The Ninth Circuit distinguished this factual scenario from the one in *Rhoden v. Rowland*, 172 F.3d 633 (9th Cir. 1999), where the district court found that the habeas petitioner had been shackled in open court for the duration of the trial. Ghent, 279 F.3d at 1133, n. 11. Furthermore, in *Rhoden* the habeas petitioner presented evidence that the jurors remembered the shackles six years after the fact, several jurors made comments pertaining to the shackles during the proceedings, and the shackles caused the petitioner physical and emotional pain during the course of his trial. Rhoden, 172 F.3d at 637. Here, Petitioner has failed to make the requisite affirmative showing of prejudice as Petitioner has offered no evidence that the jurors' observation of him in shackles "had a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). The juror's "brief and inadvertent glimpse" of Petitioner in shackles as Petitioner was being transported to the courtroom "is not inherently or presumptively prejudicial." Ghent, 279 F.3d at 1133; Castillo v. Stainer, 983 F.2d 145, 148 (9th Cir. 1992), *amended*, 997 F.2d 669 (9th Cir. 1993); *see also* Wilson v. McCarthy, 770 F.2d 1482, 1485-86 (9th Cir. 1985). Furthermore, as stated by the California Court of Appeal, the trial court rectified any resulting prejudice by admonishing the jury that the fact that Petitioner was in custody was not a fact that the jury should give any consideration to in their deliberations and that this fact should in no way prejudice them against the Petitioner. The appellate court further noted that the trial court issued CALJIC No. 1.04, which instructed the jury that:

> The fact that physical restraints have been placed on defendant must not be considered by you for any purpose. They are not evidence of guilt, and must not be considered by you as any evidence that he is more likely to be guilty than not guilty. You must not speculate as to why restraints have been used. In determining the issues in this case, disregard this matter entirely.

(CT at 236, 165). In light of the corrective measures taken by the trial court, the nature of the juror's observation of Petitioner in shackles (an inadvertent and brief glimpse in the hallway), and Petitioner's failure to offer evidence of actual prejudice, the state court's determination of this issue was not contrary to or an unreasonable application of clearly established Supreme Court precedent nor was it an unreasonable determination of the facts in light of the state court record. 28 U.S.C. §§ 2254(d)(1)-(2).

### F.    *Cumulative Error*

While no single alleged error may warrant habeas corpus relief, the cumulative effect of errors may deprive a petitioner of the due process right to a fair trial. Karis v. Calderon, 283 F.3 1117, 1132 (9th Cir. 2002); *see also* Ceja v. Stewart, 97 F.3d 1246, 1254 (9th Cir. 1996). Petitioner's claim of cumulative error must also be rejected because, as discussed above, there were no constitutional errors to accumulate. As Petitioner did not suffer prejudice as a result of any of the alleged errors, Petitioner cannot establish cumulative prejudice by combining his claims into a group.

## V.    Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253.

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:   February 23, 2009**          /s/ John M. Dixon
                                         UNITED STATES MAGISTRATE JUDGE